# Community College of Beaver County, Appellant, *v.* Community College of Beaver County, Society of the Faculty (PSEA/NEA), Appellee.

Argued November 7, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS and BLATT. Judges KRAMER and WILKINSON, JR. did not participate.

*Thomas H. M. Hough,* with him *James S. Ruffner, Craig & Ruffner,* and *Lucchino, Gaitens & Hough,* for petitioner.

*John R. DeAngelis,* with him *Ronald N. Watzman* and *Watzman, Levenson & Snyder, P.A.,* for respondents.

OPINION BY PRESIDENT JUDGE BOWMAN, February 4, 1975:

The controversy involved in this case arises out of an arbitration award under a collective bargaining agreement negotiated in September 1972 by the Community College of Beaver County (College) with the Society of the Faculty of that College (Faculty) pursuant to the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, 43 P.S. §1101.101 et seq. (Supp. 1974-1975).

The specific dispute under the September 1972 con-

tract involved the discharge by the College of two full-time faculty members represented by the Faculty incident to a retrenchment program and the subsequent hiring by the College of part-time employees. The Faculty did not contest the right of the College under the collective bargaining agreement to initially discharge two of its members, rather the Faculty contends that the College must offer the part-time positions to the discharged teachers. The College disagreed and the matter was submitted to binding arbitration as prescribed by the collective bargaining agreement under section 903 of the Act, 43 P.S. §1101.903.

On April 18, 1974, the arbitrator issued an arbitration award, wherein he concluded that under the collective bargaining agreement, the College was compelled to offer the part-time positions to the previously discharged Faculty members. The College, believing the arbitrator to have committed an error of law in his award, timely filed a petition for review in the Court of Common Pleas of Beaver County pursuant to the procedure established for review of arbitration awards by the Act of April 25, 1927, P.L. 381, 5 P.S. §169 (Act of 1927). Uncertain as to whether the Act of 1927 was applicable in view of Pa. R.J.A. No. 2101, the College also filed, as a cautionary measure, an application for review of the arbitrator's award under Pa. R.J.A. No. 2101 with this Court.

Interestingly, the College in its application to this Court under Pa. R.J.A. No. 2101 asserts that the appropriate court to review the award was the Court of Common Pleas of Beaver County under the provisions of the Act of 1927. The Faculty answered the College's application and indicated that in its opinion the review of the award was properly before this Court. On May 30, 1974, this Court issued an Order granting the College's application for review of the arbitration award, and in the same Order we vacated the proceedings instituted in the Court of Common Pleas of Beaver County.

Unlike the normal appeal, wherein it is the appellee who challenges the jurisdiction of this Court to hear the appeal by filing a motion to quash, the issue of the jurisdiction of this Court is being raised by the party who initially filed its application or appeal herein. Although this Court, in our May 30, 1974, Order, has initially determined that review of the award under Pa. R.J.A. No. 2101 is appropriately here, we believe, in view of the impact of this decision on future litigation, that our reasons for so concluding should be set forth.

Section 903 of the Public Employe Relations Act, 43 P.S. §1101.903, provides that grievances arising under a collective bargaining agreement must be submitted to binding arbitration. It is silent, however, both as to the right of judicial review of such an award and the court to which such relief is to be directed. We thus turn our attention to a consideration of the apparently conflicting procedural mechanisms and the appropriate court available for judicial review of an arbitration award as contained in Pa. R.J.A. No. 2101 and the Act of 1927.

Section 16 of the Act of 1927, 5 P.S. §176, provides that it shall apply to *any* written contract to which the Commonwealth, or any agency or subdivision, or municipal corporation or political division of the Commonwealth shall be a party. The Act of 1927, despite a clause in section 1, 5 P.S. §161, excepting personal service contracts, has been construed to apply to collective bargaining agreements. *Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America v. Pittsburgh Railways Co.*, 393 Pa. 219, 142 A.2d 734 (1958). The Act of 1927 has also been construed as governing the arbitration proceedings in contracts involving the Commonwealth, even in the absence of a contract provision specifically providing therefor. *Seaboard Surety Co. v. Commonwealth*, 345 Pa. 147, 27 A.2d 27 (1942).

Thus, viewing the Act of 1927 within its context and as interpreted by subsequent decisions of the Supreme

Court, it would appear that an appeal from the arbitration award here in question would fall within its provisions. However, Pa. R.J.A. No. 2101, adopted May 10, 1973, directs itself specifically to the class of cases here in question. In pertinent part, it provides: "(a) Review of an award of arbitrators appointed in conformity with an Act of Assembly to arbitrate a dispute between a public employer and employe shall be sought exclusively in the Commonwealth Court."

Without the benefit of any official comment or note issued incident to the promulgation and adoption of Pa. R.J.A. No. 2101 as an interpretative aid, there would seem to be little doubt that it was intended to at least afford judicial review of arbitration awards issued under the provisions of the Act of June 24, 1968, P.L. 237, 43 P.S. §217.1 et seq. (Supp. 1974-1975), commonly referred to as Act No. 111, requiring binding arbitration in labor disputes between police and firemen and their employing political subdivision upon impasse in the collective bargaining process. That such arbitration awards were not necessarily the subject of a right of appeal by a party to the arbitration proceedings was expressed in *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969). *Also see Manheim Township School District v. State Board of Education,* 1 Pa. Commonwealth Ct. 627, 276 A.2d 561 (1971), concluding that the right of appeal provided by Article V, Section 9, of our Pennsylvania Constitution does not apply to nonjudicial administrative agencies, the orders of which are not judicial in nature. It seems clear that Pa. R.J.A. No. 2101 is intended to afford a limited right to seek judicial review of arbitration awards issued under that statute as being "an award of arbitrators appointed in conformity with an Act of Assembly to arbitrate a dispute between a public employer and employe."

But is Pa. R.J.A. No. 2101 also intended to cover arbitration awards issued not only incident to and grow-

ing out of an impasse in the collective bargaining process but also such awards issued incident to and growing out of disputes or grievances over the interpretation of a collective bargaining agreement in force as mandated by section 903 of the Public Employe Relations Act, 43 P.S. §1101.903, under which the award in question was issued? Section 903 awards are certainly arbitration awards and by its provisions, such awards are the action of one or three arbitrators as prescribed by the collective bargaining agreement which section 903 requires to be a part of any such contract. That any such award is the "arbitration of a dispute" pursuant to Pa. R.J.A. No. 2101 is equally clear. Thus, a literal application of the provisions of Pa. R.J.A. No. 2101, in our opinion, encompasses the arbitration award here in question.

We would further note that section 805 of the Public Employe Relations Act, 43 P.S. §1101.805, provides for compulsory binding arbitration on impasse in collective bargaining between guards at prisons or mental hospitals and their public employer. Such arbitration awards, as are those issued under the Act of 1968 applicable to policemen and firemen, arise out of a collective bargaining impasse and thus also are clearly within the scope of Pa. R.J.A. No. 2101. In our opinion, it would be incongruous to find the Act of 1927 applicable to arbitration awards issued under section 903 of the Public Employe Relations Act while section 805 arbitration awards under the same statute are within the scope of Pa. R.J.A. No. 2101.

For those reasons and being of the opinion that Pa. R.J.A. No. 2101 is controlling over the provisions of the Act of 1927, we issued our prior Order granting the petition for review.

Having concluded that Pa. R.J.A. No. 2101 encompasses within its provisions judicial review of the class of arbitration awards here involved, we address ourselves to the merits.

As noted above, the propriety of the discharge of the two full-time teachers incident to a retrenchment program is not contested. Nor is there any suggestion that the College acted in bad faith. The sole issue is whether under the provisions of the collective bargaining agreement, such retrenched teachers have employment rights with respect to subsequently created part-time positions.

Considering the provisions of Article X, entitled "Special Term Appointments," and Article XXX, entitled "Retrenchment," we conclude that the arbitrator exceeded his authority by altering the agreement in contravention of Article IV C. 5. (c) thereof and, therefore, we must set aside the award.

Article X specifically provides that "[t]he terms and conditions of this agreement do not apply to those employed under special term appointments." Special term appointments are defined to include faculty employed on a part-time basis. Article X, therefore, excludes part-time employees from the provisions of the collective bargaining agreement; its manifest purpose being simply to protect· the covered Faculty members from actions by the College through employment of part-time teachers to dilute the job protection afforded to the covered Faculty members under the agreement. Among the benefits to covered Faculty members are the reemployment provisions of Article XXX, which, by definition, are inapplicable to part-time employees.

Article XXX provides in paragraph F that "[a] faculty member who is retrenched from the College shall be placed on a preferred rehiring list." The arbitrator construed this clause to mean that retrenched Faculty members on the preferred rehiring list must be given preference not only for full-time positions but also for part-time openings.

Such an interpretation is erroneous for several reasons. The provisions of Article XXX and the benefit conferred thereby of being placed on a preferred rehiring

list are not applicable to part-time positions, as previously alluded to, by virtue of the language of Article X. Secondly, the agreement in its entirety provides elaborate and detailed procedures for the hiring, retrenchment and rehiring of Faculty members for full-time positions. No such elaborate mechanism is provided for the employment of part-time employees. Consequently, we can only conclude that the framers intended the preferred rehiring list to be applicable only to full-time positions which are covered by the agreement.

It is also noteworthy that the latter part of paragraph F of Article XXX contains the following wording: "No new faculty members will be hired to fill a vacancy at the College for which a retrenched faculty member on the preferred rehiring list is qualified . . . . Part-time faculty members shall have recall rights only with respect to a part-time position, but shall be considered for full-time positions in accordance with Article IX hereof, Appointments." This wording also compels a contrary result to that reached by the arbitrator. The word "vacancy," in view of the specific provisions regarding the recall of part-time Faculty members and possible appointment to full-time positions, can only be interpreted to mean vacancies in full-time positions and does not include vacancies in part-time positions.

For the above reasons, the award of the arbitrator directing that retrenched Faculty members be given preference in hiring for part-time positions is hereby set aside.